IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEROY JOSEY,<br>　　Plaintiff | )<br>)<br>) |
| vs. | ) C.A.No. 06-265Erie<br>) |
| CHIEF SECRETARY JEFFREY BEARD, et al.,<br>　　Defendants. | ) Magistrate Judge Baxter<br>) |

# MEMORANDUM OPINION [1]

Magistrate Judge Susan Paradise Baxter

## A. Relevant Procedural History

Plaintiff, formerly a prisoner in state custody and now represented by counsel, filed the instant action under 42 U.S.C. §1983, the Americans with Disabilities Act, and the Rehabilitation Act. Named as Defendants to this action are: Jeffrey Beard, Secretary of the Department of Corrections; Marilyn Brooks, former Superintendent of SCI-Albion; Maxine Overton, Health Services Administrator of SCI-Albion; Paul O'Conner, Director of the Pennsylvania Bureau of Community Corrections; George Strudtman, Referral Specialist of the Department of Corrections; Physician's Assistants Tammy Mowry and Dan Telega; and Dr. Baker. Defendants Beard, Brooks, Overton, O'Conner, and Strudtman are employees of the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. Documents ## 81, 87.

1

Department of Corrections and are represented by the Attorney General's office. Defendants Mowry, Telega, and Baker are associated with Prison Health Care Systems, Inc., and are represented by private counsel.

Plaintiff is infected with Hepatitis C and alleges that he received inadequate medical care while incarcerated. In his Amended Complaint filed in August of 2008, Plaintiff alleges that:

> 1) Department of Corrections Defendants Beard, Brooks, Overton, O'Conner and Strudtman violated his Eighth Amendment rights by "deliberately delaying his access to medical services for a serious medical condition for non-medical reasons";
>
> 2) Department of Corrections Defendants Beard, Brooks and Overton violated his Eighth Amendment rights by "failing to provide Plaintiff with proper Hepatitis C evaluation and treatment for non-medical reasons";
>
> 3) Department of Corrections Beard and Brooks violated Plaintiff's Eighth Amendment rights by "creating and enforcing an unconstitutional policy for the provision of Hepatitis C treatment";
>
> 4) Department of Corrections Defendants Beard, Brooks and Overton violates his Eighth Amendment rights by "enforcing an unconstitutional policy for the provision of Hepatitis C treatment"; and
>
> 5) Department of Corrections Defendants O'Conner, Strudtman, Beard, and Brooks violated Plaintiff's rights under the ADA by "denying him medical care based on his disability and by not providing Plaintiff Josey with a reasonable accommodation in parole placement to allow him to access medical care for his disability."

Document # 64, Amended Complaint, ¶¶ 91 - 95, respectively.

The Hepatitis C protocol issued by the Bureau of Health (a division of the Department of Corrections) contains four exclusionary factors to the Interferon-based treatments. The factors are listed in order of importance: 1) minimum of between 12 to 18 months remaining on the sentence; 2) medical clearance; 3) drug and alcohol clearance; and psychiatric clearance.

Document # 93-8, page 23; Document # 93-7, Deposition of Mark Baker, D.O., exhibit at page 79. Plaintiff refers to the initial factor as the "sentence tail exclusion." Document # 96, page 2, n.1.

Besides Hepatitis C, Plaintiff has several chronic medical conditions including obesity, hypertension, diabetes, bipolar disorder and the possibility of coronary artery disease. Document # 93-9, Report of Plaintiff Expert Dr. Scott Allen, page 24. Defendants contend that Plaintiff's other medical and psychiatric conditions, as well as his history of noncompliance with prescribed medical treatments, are complicating factors in the treatment of his Hepatitis C.

The Department of Corrections Defendants[2] have filed a motion for summary judgment. Plaintiff has filed an Opposition Brief. The issues have been fully briefed and are ripe for disposition by this Court.

**B.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

---

[2] Defendants Mowry, Telega and Baker have not filed a dispositive motion, but have filed their pretrial narrative statement.

a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court

must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

**C.    The Prison Litigation Reform Act**

The Department of Corrections Defendants argue that this case should be dismissed against Defendants Beard, Brooks, O'Conner and Strudtman because Plaintiff has failed to fully exhaust his administrative remedies as to them in accordance with the requirements of the PLRA.

### 1.    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[3]

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). In categorizing exhaustion as an affirmative defense, the Third Circuit outlined the underlying policy considerations: "... it appears that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion"). The Third Circuit has made clear that there is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").[5]

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the

---

prisoner to demonstrate exhaustion. Prison officials are likely to have [...] superior access to prison administrative records in comparison to prisoners. Prison officials and their attorneys can also readily provide the court with clear, typed explanations, including photocopies of relevant administrative regulations. *Pro se* prisoners will often lack even such rudimentary resources." Id.

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5] See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

6

administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 199, 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a

written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

3. **Grievance Number 154788**

On June 11, 2006, Plaintiff filed a greviance, complaining:

> Ms. Overton is denying me medical treatment for my Hepatitis C and my condition is getting worse. She denied it because I got parole. However, I'm having problems getting release to the half-way house. The head man that runs the half-way houses in Philadelphia is claiming there is only 5 beds [...]. Also there is 80 some inmates in all of Pennsylvania waiting on these 5 beds. Mr. Steward, my parole agent, said that I'm going to be here for a long time. This is a life threatening disease without treatment. I've been in this facility for 6 years and the Medical Depart. only made one attempt to treat me for my condition. In between waiting for parole to go home my disease could take a serious turn for the worse. Not treating me would be immoral and very unproffesional [sic]. It also constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. I just want to stay alive so I can go home to my family.

Document # 93-3, page 2. Plaintiff acknowledges that this is the only grievance he filed regarding this issue. Document # 97, Plaintiff's Counter Statement of Material Facts, ¶ 3.

In the Initial Review Response by Defendant Maxine Overton herself, she indicated:

> Inmate Josey was scheduled to review has [sic] grievance with me on June 19, 2006. He was a no show. He contends in his greviance that he is being denied treatment for his Hepatitis disease. Inmate Josey has been seen several time [sic] is [sic] the Medical Department. His exclusion from treatment has been explained to him several times. He is presently excluded from treatment due to his minimum sentence date of February 20, 2006. It is also well documented in his medical records of non-compliance with his medication and medical treatment, which would make him a poor candidate. Consider this grievance resolved.

8

Document # 93-3, page 4.

Thereafter, Plaintiff appealed to Defendant Superintendent Brooks, who sustained Overton's decision by Memo dated July 27, 2006. Plaintiff appealed to the Central Office and on October 25, 2006, the Chief Grievance Officer indicated:

> [...] I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal from initial review and the superintendent's response. I have also carefully reviewed the issues you raise to final review with the Bureau of Health Care Services.
>
> A review of the record by the Bureau of Health Care Services shows that they recommended to the medical department at SCI-Albion that you be re-evaluated for Hepatitis C treatment. It is recommended that you work with medical staff to be compliant with taking the required medication and treatment given to you.

Document # 93-3, page 6.

### 4. Analysis

Department of Corrections Defendants argue that Plaintiff has only exhausted his administrative remedies on his Eighth Amendment claim against Defendant Overton and that the Eighth Amendment claims against the other Department of Corrections Defendants, as well as the ADA and Rehabilitation Act claims, should be dismissed. This Court agrees with Defendants.

The text of Plaintiff's grievance only names Overton and specifically states that she is denying him medical treatment.[6] While "exhaustion is not inadequate simply because an

---

[6] Although Plaintiff mentions the "headman that (sic) runs the halfway house in Philadelphia," he does not indicate that the "headman" (who Plaintiff now argues is both O'Connor and Strudtman - see Document # 98, Affidavit of Plaintiff Leroy Josey, ¶¶ 12,13) is denying him medical care. A passing reference to an unnamed individual is not enough to satisfy the exhaustion requirements of the PLRA. See Spruill.

9

individual later sued is not named in the prison grievance," the Supreme Court has "made clear ... that the necessity of naming an individual Defendant in a grievance will be governed by the applicable prison grievance procedure." Gravely v. Tretnik, 2009 WL 1362316, *2 (W.D. Pa. May 13, 2009) quoting Jones v. Bock, 549 U.S. at 217-18. Here, the applicable regulation, DC-ADM 804, VI.,A.7, provides that the prisoner "include a statement of the facts relevant to the claim, ... the inmate will identify any person(s) who may have information that could be helpful in resolving the greviance." Document # 98, page 38. Plaintiff has not included any claims regarding the actions of Defendants Beard, Brooks, O'Connor and Strudtman as he must under the Department of Corrections' regulations. Therefore, Plaintiff has not exhausted his administrative remedies as to these Department of Corrections Defendants.

In an effort to salvage his unexhausted claims, Plaintiff argues that "because Defendant Overton was assigned to respond to a greviance dealing with her own conduct, Plaintiff Josey's failure to specially name Defendant Beard for his role in approving the protocol, Defendant Brooks for enforcing the protocol, Defendant O'Connor and Defendant Strudtman for interfering with his access to medical care should be waived." Document # 96, page 18. Although Defendant Overton was assigned to respond to a grievance that specifically named her in violation of Department of Corrections' policy, Plaintiff's failure to exhaust as against the other Department of Corrections Defendants will not be excused because this policy violation does not impact the availability of the administrative process.[7] In addition, Plaintiff also argues,

---

[7] A prisoner need not exhaust every administrative remedy, only those administrative remedies which are available to him. Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). In this context, "available" means "capable of use" (Brown v. Croak, 312 F.3d 109,113 (3d Cir. 2002)) and the availability of the administrative remedy process is a question of law (Ray, 285 F.3d at 291). Interference with an inmate's attempts at exhaustion impact the availability of the

without elaboration or support, that "overly restrictive grievance procedures" violate the notions of procedural and substantive due process, as well as the protections of the First Amendment right of access to the courts. Neither the requirement to identify individuals involved nor a time limitation for filing a grievance violates the constitutional rights of due process and access to courts.

Accordingly, Defendants Beard, Brooks, O'Conner and Strudtman will be dismissed. As the ADA and Rehabilitation Act claims are only advanced against Beard, Brooks, O'Conner and Strudtman and because the facts underlying those claims have not been exhausted, they will be dismissed due to Plaintiff's failure to exhaust. See Woodford, 548 U.S. at 85 (exhaustion required for all suits challenging prison conditions, not just § 1983 actions).

---

administrative remedy process. Brown, 312 F.3d at 111; Camp, 219 F.3d at 281. "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (administrative remedies process not available to inmate where prison staff refused to provide him with necessary forms). See also Berry v. Klem, 283 Fed. Appx. 1, 5 (3d Cir. March 20, 2009) ([Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. Feb. 20, 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown, 312 F.3d at 113 ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC-ADM 804 was never 'available' to Brown within the meaning of 42 U.S.C. § 1997e.").

**D.     The Remaining Eighth Amendment Claims against Defendant Overton**

As to Defendant Overton, Plaintiff alleges that she violated his Eighth Amendment rights by 1) "deliberately delaying access to medical services for a serious medical condition for non-medical reasons" (Document #64, ¶91); 2) "failing to provide Plaintiff with proper Hepatitis C evaluation and treatment for non-medical reasons" (id. at ¶92); and 3) "enforcing an unconstitutional policy for the provision of Hepatitis C treatment" (id. at ¶94).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs[8]. Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Furthermore, deliberate indifference is generally not found when some level of

---

[8] The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The Department of Corrections Defendants acknowledge that Hepatitis C is a serious medical need. Document # 94, page 8.

medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

Non-medical prison officials, such as Defendant Health Services Administrator Overton, are not

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [...] will not be chargeable with [...] deliberate indifference [under the Eighth Amendment].

Spruill, 372 F.3d at 236, quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.). In other words, a non-medical supervisory official may be held liable if there was "knowledge of 'malicious' and 'sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D. Pa.), interpreting Spruill, 372 F.3d at 236-237.

The record demonstrates that Plaintiff received medical care and treatment from

13

numerous medical professionals. The treatment included monitoring of Plaintiff's overall health as well as his liver enzymes and Hepatitis C indicators. Document # 93-15, Report of Defendants' Expert Todd R. Wilcox, M.D., page 9. Even Dr. Allen, Plaintiff's own expert, indicates that Plaintiff's liver enzyme levels were constantly monitored. Document # 93-9, Report of Plaintiff's Expert Scott A. Allen, M.D., page 24. Plaintiff does not dispute that his condition was monitored, but only that the results of lab tests were not discussed with him. Document # 98, Affidavit of Plaintiff Leroy Josey, ¶ 4.

In her capacity as the Health Services Administrator, Defendant Overton is not deliberately indifferent if she failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. Medical professionals who were monitoring Plaintiff, including the Infectious Disease Nurse, indicated to Defendant Overton that Plaintiff was not medically cleared to receive treatment. Document #93-8, Deposition of Defendant Maxine Overton, page 11. Defendant Overton's reliance on the opinion of medical professionals even as Plaintiff grieved the lack of Interferon-based treatment does not show that Overton possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon her. See Henderson, 2006 WL 3761998.

Further, it is the not responsibility of the Health Services Administrator to order the treatment sought by Plaintiff.[9] Such a decision is made by the Medical Director in conjunction with the Bureau of Health Care. Document # 93-8, page 10. Although Overton is a Registered Nurse, she cannot prescribe medication nor can she make the decision as to whether Hepatitis

---

[9] The responsibilities of the Health Services Administrator include managing the Health and Dental Departments of the prison, overseeing nursing staff, and overseeing independent contractors, such as PHS, Inc. Document # 93-8, Overton Deposition, page 4.

treatment is ordered for a patient. Id. at pages 8, 23-4.

Accordingly, summary judgment will be granted in favor of Defendant Overton on the claims that she violated Plaintiff's Eighth Amendment rights by 1) "deliberately delaying access to medical services for a serious medical condition for non-medical reasons" (Document #64, ¶91); and 2) "failing to provide Plaintiff with proper Hepatitis C evaluation and treatment for non-medical reasons" (id. at ¶92).

### E. Qualified Immunity

Next, Department of Corrections Defendants argue that this case should be dismissed against them because they are entitled to qualified immunity. Presently, the only claim remaining against any Department of Corrections Defendant is the claim that Defendant Overton violated Plaintiff's Eighth Amendment rights by enforcing an unconstitutional policy. Plaintiff argues that the Hepatitis protocol, specifically the initial factor (the "sentence tail exclusion") to the Interferon-based treatment, violates the Eighth Amendment.

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v.

Pelzer, 530 U.S. 730, 739 (2002).[10]

The analytical framework that district courts have previously employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 536 U.S. 730; Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).

However, the rigid two-step inquiry set forth in Saucier has recently been relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808 (Jan. 21, 2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. March 6, 2009). As the Supreme Court

---

[10] In other words, "[w]hen an officer's actions give rise to a §1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them from undue interference with their duties and from potentially disabling threats of liability. The privilege of qualified immunity, however, can be overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (internal citations omitted).

16

explained: "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, ___ U.S. at ___, 129 S.Ct. at 821.

Another district court within this Circuit recently summarized the current state of the *Saucier* framework in the post-*Pearson* era:

> By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate, the Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." In addition, "[a]lthough the first prong of the *Saucier* procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

DeLauri v. New Jersey Div. of State Police, 2009 WL 222983, at *5 (D.N.J., Jan. 27, 2009), quoting Pearson, ___ U.S. at ___, 129 S.Ct. at 818-20. See also Newland v. Reehorst, 2009 WL 1298414, at *2 (3d Cir. May 12, 2009) (proceeding directly to the second step of the *Saucier* analysis).

Plaintiff's final remaining claim against Defendant Overton is a claim that would require the "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of this case" as evidenced by the parties lengthy arguments regarding the constitutionality of the sentence tail exclusion. Accordingly, in the spirit of *Pearson*, this Court will proceed straight to the second prong of the *Saucier* analysis - whether the right is "clearly established."

17

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent." Hope, 536 U.S. at 739. In other words, "to be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right." Karnes v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995).

Here, it has long been established that inmates have an Eighth Amendment right to medical care. See Estelle v. Gamble, 429 U.S. 97 (1976).[11] However, the precise contours of deliberate indifference as applied to the sentence tail exclusion of the Hepatitis protocol are not. In the qualified immunity analysis, this Court "must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley, 278 F.3d at 277, quoting Saucier. This inquiry should "be undertaken in light of the specific context of the case, not as a broad general proposition." Id.

Here, even if the Hepatitis C protocol is found to be unconstitutional (an issue upon

---

[11] "We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 104.

18

which this Court makes no finding), its failure to pass constitutional muster would not have been evident to a reasonable person in Defendant Overton's position because a Health Services Administrator, such as Overton, would be cognizant that a minimum amount of time was medically necessary in order to provide Plaintiff with the full series of treatments.

Defendant Overton is entitled to qualified immunity and summary judgment will be granted in her favor on the remaining claim.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEROY JOSEY, )<br>    **Plaintiff** )<br>)<br>vs. )<br>)<br>CHIEF SECRETARY JEFFREY BEARD, et al.,)<br>    **Defendants.** ) | | C.A.No. 06-265Erie<br><br>Magistrate Judge Baxter |

## O R D E R

AND NOW, this 29th day of June, 2009;

IT IS HEREBY ORDERED that the motion for summary judgment filed by the Department of Corrections Defendants [Document # 93] be GRANTED. The Clerk of Courts is directed to terminate Defendants Beard, Brooks, Overton, O'Conner, and Strudtman from the docket. Additionally, the ADA and Rehabilitation Act claims are dismissed against all Defendants.

This case will be set for jury trial during the jury term beginning October 5, 2009.

S/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
United States Magistrate Judge
